## SWAN CARBURETOR CO. v. NASH MOTORS CO.

No. 1884.

District Court, D. Maryland.

May 13, 1938.

Richey & Watts (by F. O. Richey and Frederick M. Bosworth), of Cleveland, Ohio, and Edwin F. Samuels and Thomas W. Y. Clark, both of Baltimore, Md., for plaintiff.

Fish, Richardson & Neave (by Merrill E. Clark and Charles H. Walker), of New York City, and Venable, Baetjer & Howard (by Charles McHenry Howard), of Baltimore, Md., for defendant.

WILLIAM C. COLEMAN, District Judge.

This is a patent infringement suit relating to intake manifolds for internal combustion engines such as automobile engines, the manifold being the piping which leads from the carburetor and air intake to the several cylinders. This case is now before the Court on three motions by the plaintiff, made in the alternative, which may be summarized as follows: (1) Motion to strike certain parts from the defendant's answers and enter an interlocutory decree with respect to all of defendant's alleged infringing devices; or (2) motion for a separate trial on the question of res judicata; or (3) motion for an interlocutory decree and a reference to a Special Master as to certain of defendant's devices admitted to be infringements as a result of previous litigation hereinafter referred to, and a determination by such Special Master of the question whether certain other devices of defendant also infringe.

A single claim, No. 20, in patent No. 1,536,044, issued April 28th, 1925, to John W. Swan, on application filed November 5th, 1924, as a continuation in part of the application for patent No. 1,636,721 issued June 26th, 1927, on application filed September 17th, 1921, is here involved.

The real question underlying all three of plaintiff's motions is whether prior litigation involving these patents should be given the scope and effect which the plaintiff here claims should be given to it, the defendant, on the other hand, denying that as to its alleged infringing devices hereinafter referred to as the second group of manifolds, there has ever been any adjudication. It thus becomes necessary at the outset to review, at least briefly, the history of the prior litigation relating to these patents which occurred in the Sixth Circuit.

In June 1923, while the application for the later in issuance of the two patents, namely, No. 1,636,721 was still pending in the Patent Office, the plaintiff entered into a license contract with General Motors Corporation which included any patent which might result from this application. In November 1926, because of a dispute over royalties under this contract, plaintiff brought an action at law in the District Court for the Northern District of Ohio, Eastern Division, against General Motors Corporation for the recovery of certain royalties alleged to be due it. The decision was favorable to the plaintiff and the judgment which it obtained in the lower court was affirmed by the Circuit Court of Appeals for the Sixth Circuit. See Swan Carburetor Co. v. General Motors Corp., D.C., 42 F.2d 452; General Motors Co. v. Swan Carburetor Co., 6 Cir., 44 F.2d 24.

At about the same time, the plaintiff filed a suit for patent infringement in the same District Court on the earlier of these two patents, namely, No. 1,536,044, against Reeke-Nash Motors Company, a distributing agency for the Nash Motors Company. Subsequently, in this same suit, the later patent, No. 1,636,721, was brought in by supplemental bill. In this suit, the alleged infringements were manifolds identical with the manifolds hereinafter referred to as the first group (plaintiff's exhibits 40 to 46, inclusive). These manifolds were also of the same construction as the manifold held to infringe Swan's invention under patent No. 1,536,044, as a result of which the plaintiff recovered royalties in its suit hereinbefore referred to against General Motors Corporation. After reference of the equity suit to a Special Master and the usual subsequent proceedings, the validity of both of the Swan patents, including claim 20 of patent #1,536,044, here in suit, was sustained, and likewise, these patents were held to have been infringed by defendant's manifolds of the first group. In this suit, plaintiff voluntarily waived an accounting and the lower court's decree was affirmed by the Circuit Court of Appeals for the Sixth Circuit, the finding of infringement being limited, however, to claims 13 and 20, (the latter the only one here in suit) of the first Swan patent, that is, No. 1,536,044, and to claims 5 and 7 of the second Swan patent, that is, No. 1,636,721. See General Motors Corporation v. Swan Carburetor Co., 6 Cir., 88 F.2d 876. At the same time and in the same opinion, the Circuit Court of Appeals also affirmed the judgment of the lower court in a second suit at law brought by the plaintiff against General Motors Corporation under its license contract.

Since the Reeke-Nash Motors Company was a distributing agency for the parent corporation, the Nash Motors Company, defendant in the present suit, the latter is estopped, and it so admits, on the doctrine of privity by virtue of the previous litigation against the Reeke-Nash

Company, to deny that the four Swan claims adjudicated by the decree in that litigation are valid and that they are infringed by the so-called first group manifolds (plaintiff's exhibits 40 to 46, inclusive) introduced in the present suit. But there is no claim that there was any privity between the Nash Motors Company and General Motors Corporation and, therefore, what was decided in the litigation in the Sixth Circuit against the latter Corporation does not operate as an estoppel against the present defendant. Furthermore, and this is the gist of the present controversy on plaintiff's motions, defendant contends that neither is it estopped by the decree in the Reeke-Nash Company litigation, to deny that the so-called second group of manifolds (plaintiff's exhibits 32 to 36, inclusive) here involved, infringe claim 20 of Swan patent No. 1,536,044, since, as defendant asserts, plaintiff has never before claimed in any suit against it, or against any person or corporation with whom it was in privity, that this second group of manifolds infringed this claim, although defendant admits plaintiff might have done so in the Reeke-Nash Company case through filing a supplemental bill, since these manifolds were made by the defendant and sold by its distributing agent, the Reeke-Nash Company, while that litigation was still pending. Stated differently, and with more direct relation to the patent question itself, defendant here contends that its manifolds of exhibits 32 to 36 are different from its manifolds of exhibits 40 to 46, in that the first mentioned ones are modeled on the prior art of one Matheson to which the defendant claims to have reverted in designing its manifolds as a result of the opinion of the lower court in the General Motors Corporation Case above referred to.

On the other hand, plaintiff contends that since, in the course of the trial of the Reeke-Nash Company case, there was introduced evidence of these same second group manifolds of defendant's; and since defendant's Vice President and Chief Engineer testified with respect to them that they differed only in dimensional degree from the prior art manifold of Matheson, such is not enough to distinguish them from the Swan claim here in suit which, as above pointed out, was found in the plaintiff's litigation with General Motors Corporation to have been a patentable improvement over the prior art of Matheson. The gist of the Swan invention consists in bringing the gaseous mixture from the carburetor through a vertical pipe called the "riser" to a horizontal pipe called the "header" in perpendicular or straight lines; then abruptly changing its course at right angles in the "header" and again changing its course, also at right angles, from the "header" into the horizontal outlet branches leading to the cylinders. The defendant on the other hand relies upon the fact, which we find to be true, that these second group manifolds do not have the sharp inside corners that the manifolds of the so-called first group have, but on the contrary have rounded corners, and it is this construction which defendant contends is proportioned in accordance with the prior art Matheson manifolds. The question of identity between these competing devices is a most complicated one. It is capable of accurate determination only with the aid of scientific minds and experiments. Therefore, it is impossible for this Court to say without such aid, in addition to what has already been disclosed as a result of the previous litigation involving these patents, whether the devices are, as plaintiff contends, identical except for immaterial variations in structural proportions. Such determination can only be reached after a full hearing of witnesses for both sides. Equity Rule 33, 28 U.S.C.A. following section 723, is not conclusive of the present situation because that relates to the striking out of affirmative defenses; not negative defenses. Here, defendant denies the charge of infringement. Plaintiff asks us, in lieu of a trial on the merits, to put such a construction upon defendant's device because of prior suits, to one of which defendant was neither a party nor in privity, and which is apparently the more pertinent, as will require a finding that defendant's device does infringe plaintiff's device, and this, in face of the fact that plaintiff has never before charged in any suit against this defendant or against anyone with whom this defendant was in privity, that this particular device of defendant infringes plaintiff's device. Clearly, defendant is entitled to its day in court on this issue. The testimony offered by the defendant in the Reeke-Nash Company case concerning the operation of the Nash second group manifolds, upon which plaintiff relies, as admissions in the nature of an estoppel against defendant to deny infringement, was, we find, offered for the purpose of demonstrating the prior

art of Matheson, and while done for the purpose of supporting defendant's contention of invalidity of the Swan manifold because of the prior art, cannot now be used to deprive defendant of its rights to demonstrate, if it can, that its manifolds are in fact a reversion to the prior art over which the Swan manifold has, by the previous litigation, been determined to be a distinct invention.

As a result of our conclusions with respect to plaintiff's first motion, it becomes unnecessary to give separate consideration to plaintiff's second motion because, since that is founded upon the theory of res judicata, our finding with respect to this point in its relation to plaintiff's first motion is determinative of plaintiff's second motion. Plaintiff, by this second motion, seeks to obtain a piece-meal presentation of its case to which, for the reasons already stated, defendant is not required to accede.

Finally, we turn to the plaintiff's third alternative motion, by which is sought an interlocutory decree as to plaintiff's manifolds of the first group as to which, as we have seen, there is no contest here, and a reference to a Master to determine damages and profits with respect thereto, including by such reference a determination also by the Master of the question of alleged infringement by defendant's manifolds of the second group. To direct such a reference at this time would be to delegate to the Master the duty of deciding what appears to be a highly technical, most difficult question of patent infringement arising out of a new, factual situation, and therefore, not to be treated as merely ancillary to the duties commonly performed by a Master. In short, should this infringement question be considered as properly referable to a Master, it is not conceivable that such reference would do more than amount to a duplication of labor and delay the Court in reaching a final conclusion on the merits, unless the Master be an expert in this particular phase of mechanical engineering. As explained in the course of the hearing on plaintiff's motions, this Court believes it more feasible, and therefore prefers, to hear, in the first instance, the testimony of the experts, including the testimony of the neutral expert witness with respect to whom, upon recommendation of the Court, the parties have agreed, and who, by reason of his expertness and neutrality, should

be of immeasurable value to both sides, as well as to the Court, in shedding light upon all angles of the scientific question involved.

For the aforegoing reasons, a decree has been signed in accordance with this opinion, overruling all three of plaintiff's motions.