**Frank T. BUCKLEY, Jr. Plaintiff,**

**v.**

**AIRSHIELD CORPORATION,**
**et al., Defendants.**

Civil Action No. AW–95–1481.

United States District Court,
D. Maryland.

Aug. 27, 1997.

Charles D. Ossola, Kenneth E. Krosin, Michael Edward McCabe, Jr., Lowe, Price, Leblanc & Becker, Alexandria, VI, for Plaintiff.

Dennis L. Thomte, Zarley, McKee, Thomte, Voorhees & Sease, P.L.C., Omaha, NE, for Defendants.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

Pending before the Court are Plaintiff's Motion for Partial Summary Judgment on Validity, Enforceability, and Defendants' Infringement of U.S. Patent No. 4,245,862 Based Upon Judicial Estoppel and *Res Judicata;* Defendants' Motion for Claim Interpretation; and Defendants' Motion for Partial Summary Judgment of Invalidity of Claims 1–15 of U.S. Patent No. 4,245,862 as Being Indefinite Under 35 U.S.C. § 112. A hearing on these Motions was held on April 25, 1997, and the Court took these matters under advisement. For the reasons set forth below, the Court will grant Plaintiff's Motion and will deny Defendants' Motions.

### Background

The device at issue in this case is a "Drag Reducer for Land Vehicles," United States Patent No. 4.245,862 ("the '862 patent"). Plaintiff, who conceived of the device, filed his original patent application on February 19, 1976, as serial no. 659,517. Claims 1–7 of that application were rejected by the Patent Office, as was the continuation-in-part application which Plaintiff filed in response. Following this rejection, Plaintiff filed a final patent application, which was ultimately approved. Pursuant to this approval, the Patent Office issued the '862 patent to Plaintiff.

Plaintiff entered into an agreement with Rudkin–Wiley, a manufacturer of drag reduction devices for trucks, under which Rudkin–Wiley became the exclusive licensee of the '862 patent upon the patent's issuance. Between October and November of 1985, Rudkin–Wiley filed four lawsuits for infringement of the '862 Patent in federal district courts. In December 1985, Buckley and Rudkin–Wiley agreed that Buckley would join Rudkin–Wiley as a co-plaintiff in these actions. The litigation in three of these cases continued until 1991, with Airshield USA acting as the successor to Rudkin–Wiley in the suits, pursuant to a 1989 agreement among the parties. One of these cases, *Rudkin–Wiley Corp. v. Fibertec, Inc.,* Civil Action No. 85–0929, in the United States District Court for the District of Nebraska ("the Fibertec action"), will be discussed at

greater length in this Opinion's analysis of Plaintiff's Motion for Summary Judgment.

On August 20, 1991, Plaintiff terminated Defendant's exclusive license, citing failure to make timely payments of royalties and other funds due to Buckley under the licensing agreement. Plaintiff brought the present action on May 17, 1995. In Count I of the Amended Complaint, Buckley alleges that Defendants are manufacturing, using, or selling truck fairings which infringe the '862 patent. Count II alleges that Airshield USA breached its licensing agreement, and Counts III–VI allege various tort causes of action against Defendants. Defendants have denied infringing the '862 patent and have argued that the patent is invalid and unenforceable. Pursuant to this, each Defendant has filed a counterclaim seeking a declaratory judgment that the '862 patent has not been infringed and is invalid.

### Discussion

I. *Plaintiff's Motion for Summary Judgment*

#### Summary Judgment Principles

Summary judgment is appropriate where there is no genuine issue of material fact and where the parties are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Id.* at 327, 106 S.Ct. at 2555 (citations omitted). *See also Bland v. Norfolk & Southern Railroad Co.*, 406 F.2d 863 (4th Cir.1969).

In determining whether genuine and material factual disputes exist, resolution of which requires trial, the Court has reviewed the parties' respective memoranda, construing all facts, and all reasonable inferences drawn therefrom, in the light most favorable to the Defendants. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Applying these principles to the case, the Court will deny Plaintiff's Motion for Summary Judgment.

### Discussion

Plaintiff's Motion is brought under the doctrines of judicial estoppel and *res judicata*. Plaintiff argues that Fibertec, Airshield USA, and Airshield Canada should be barred from untesting the validity, enforceability or infringement of the '862 patent based on *res judicata*. Plaintiff notes that the consent judgment in the Fibertec Action acknowledged the validity and enforceability of the '862 patent and acknowledged that the patent was infringed by certain products manufactured or sold by Fibertec. Rudkin-Wiley, Buckley and Fibertec were all named parties in this Consent Judgment, which stated:

> IT IS HEREBY ORDERED AND ADJUDGED THAT:....
>
> 2. United States Letters Patent No. 4,245,862 of Frank T. Buckley, Jr., entitled "Drag Reducer for Land Vehicles," is valid and enforceable, and has been infringed by defendant's manufacture and/or sale of the products accused of infringement in this action.

*See* Plaintiff's Exhibit 7, Speranza Decl. Plaintiff notes that not all of the fairings that Plaintiff alleges to be infringing in the immediate action were addressed by the Fibertec action's Consent Judgment. Plaintiff specifically states that this Motion "is only seeking a partial summary judgment of infringement as to those Fibertec fairings previously adjudicated as infringing the '862 Patent." Plaintiff's Memorandum in Support of Motion at 26, ft. 17.

Case law in the Fourth Circuit and elsewhere clearly holds that a consent judgment which provides that a patent is valid and infringed is *res judicata*, and that such a judgment bars the parties to the judgment, or their privies, from relitigating validity, enforceability, or infringement in subsequent legal proceedings. *Swan Carburetor Co. v. Nash Motors Co.*, 25 F.Supp. 21, 22–23 (D.Md.), *aff'd*, 98 F.2d 115 (4th Cir.1938). Other Circuits have adopted similar rules. *See Interdynamics, Inc. v. Firma Wolf*, 653 F.2d 93, 97 (3d Cir.), *cert. denied* 454 U.S.

1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981); *American Equip. Corp. v. Wikomi Mfg. Co.,* 630 F.2d 544, 546–48 (7th Cir.1980); *Wallace Clark & Co. v. Acheson Indus., Inc.,* 532 F.2d 846, 848–49 (2d Cir.), *cert denied,* 425 U.S. 976, 96 S.Ct. 2177, 48 L.Ed.2d 800 (1976); *Schlegel Mfg. Co. v. USM Corp.,* 525 F.2d 775, 778–81 (6th Cir.1975), *cert. denied,* 425 U.S. 912, 96 S.Ct. 1509, 47 L.Ed.2d 763 (1976). As Plaintiff notes in his Reply, Defendants have not challenged the validity of this legal standard.

Rather, Defendants argue that *res judicata* does not apply because "the suit is not between the same parties and does not involve the same cause of action involved in the first suit." Opposition at 6. The Court, however, does not agree with this statement. The Fibertec action alleged that Fibertec was infringing the '862 patent, and the parties to the present action are parties or privies of parties to the Fibertec action. Both Buckley and Fibertec were parties to the Fibertec action, and Airshield USA and Airshield Canada are privies to parties in the original action, as explained below.

Likewise, Defendants argue that *res judicata* should not apply because the parties to the Fibertec action had already reached a settlement at the time that the district court entered its consent judgment. Defendants assert that because the Fibertec action was at that time moot, the district court lacked jurisdiction to enter the consent judgment, and thus that judgment is not *res judicata.* Defendants cite the case of *Gould v. Control Laser Corp.,* 866 F.2d 1391 (Fed.Cir.1989) as support for this proposition. However, the Court interprets *Gould* differently, as the *Gould* court states that "Settlement moots an action ... although jurisdiction remains with the district court to enter a consent judgment." *Id.* at 1392. Furthermore, the Court's independent research has revealed no law in support of Defendants' contention.

■ Defendants argue further that *res judicata* is not applicable because at the time that they were licensees under the patent, Airshield and/or Rudkin–Wiley could have challenged the validity and enforceability of the patent. However, the case law on this issue holds that although a patent licensee

may challenge the patent's validity (*See Lear v. Adkins,* 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969)), a former licensee can nonetheless be barred by *res judicata.* See *Foster v. Hallco,* 947 F.2d 469, 477 (Fed.Cir. 1991) (holding that Lear does not bar the application of *res judicata* principles).

Finally, Defendants argue that the consent judgment in the Fibertec Action is not *res judicata* because it does not embody an intention by Fibertec not to challenge the validity of the patent at some later date. Defendants cite the Federal Circuit case of *Foster v. Hallco Mfg. Co.,* 947 F.2d 469 (Fed. Cir.1991), as support for this argument. However, the Court believes that *Foster* suggests a different holding. The Court in *Foster* stated that notwithstanding the doctrine of licensee estoppel propounded in *Lear,* the doctrine of *res judicata* may bar a challenge to validity by a patent licensee in such circumstances. *Id.* at 477–48. Further, the *Foster* Court specifically reaffirmed that *res judicata* applies to consent judgments. *Id.* at 478. However, the *Foster* Court drew a distinction between *res judicata* and issue preclusion, stating that for *collateral estoppel* to apply, the party estopped must have intended to preclude a subsequent challenge to validity. *Id.* at 480–81. In this way, the *Foster* Court distinguished this *collateral estoppel* rule from the *res judicata* rule which does not require intent. Thus, under *Foster,* Defendants need not have intended to bar future challenges in order for *res judicata* to apply.

■ For these reasons, *res judicata* bars Fibertec, a signatory to the original Fibertec consent judgment, from relitigating the validity or enforceability of the '862 patent, and from challenging that the '862 patent is infringed by the commercial fairings already adjudicated as infringing. Further, the Court has concluded that this *res judicata* bar also applies to Airshield USA, as Airshield USA is in privity with both Rudkin–Wiley and Fibertec (parties to the original lawsuit). Airshield purchased Rudkin–Wiley, and its succession to the business was effective on August 30, 1989 (two days after the settlement of the Fibertec action and eight days before the entry of the consent judg-

ment). Likewise, Airshield USA is in privity with Fibertec because the two entities have merged. The Articles of Merger held that "the Surviving Corporation [Airshield USA] will be subject to all of the debts and liabilities of the Subsidiary Corporation [Fibertec] in the same manner as if the Surviving Corporation had incurred the debts and liabilities." Plaintiff's Exhibit 8 at 2. Pursuant to this, Airshield USA is bound by the terms of the consent judgment in the original Fibertec action.

Finally, Defendants do not challenge Plaintiff's assertion that Airshield Canada is also in privity with both Airshield USA and Fibertec. *See* Defendants' Opposition. Airshield was Airshield USA's parent company from 1989 until 1991. As such, Airshield Canada owned all of the shares of Airshield USA, and shared the same officers and directors. This is sufficient to persuade the Court of privity between Airshield USA and Airshield Canada. Furthermore, since Fibertec is now a part of Airshield USA, Airshield Canada shares such privity with Fibertec as well.

■ Thus, the Court concludes that Fibertec, Airshield USA, and Airshield Canada are barred by *res judicata* from contesting the validity, enforceability, and Fibertec's infringement of the '862 patent through the fairings which were the subject of the previous litigation. Accordingly, the Court will grant Plaintiff's Motion. The other basis for Plaintiff's Motion, judicial estoppel, therefore need not be addressed, as it seeks only a subsidiary of this finding. Specifically, Plaintiff has also argued that Airshield USA and Airshield Canada are barred by judicial estoppel from contesting the validity and enforceability of the '862 patent.[1] Because the Court's finding on *res judicata* achieves this effect, the Court need not address Plaintiff's arguments on judicial estoppel.

---

1. Judicial estoppel is an equitable doctrine preventing a party from espousing a factual or legal position in one lawsuit that contradicts the position that the party took in a previous lawsuit. *John S. Clark Co. v. Faggert & Frieden, P.C.,* 65 F.3d 26, 28–29 (4th Cir.1995); *Guinness PLC v.*

## II. Defendants' Motion for Claim Interpretation

### Legal Standard

■ Defendants' Motion invokes the Court's authority under *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 970 (Fed.Cir.1995) (en banc), *aff'd,* — U.S. —, —, 116 S.Ct. 1384, 1393, 134 L.Ed.2d 577 (1996). In *Markman,* the Federal Circuit held that the determination of the meaning of the language in a patent claim is a question of law for resolution by the district court. The Federal Circuit has provided district courts with guidance on how to undertake motions for interpretation. First, the district courts must look at the intrinsic evidence of record (the language of the claims themselves, the patent specification, and the prosecution history). *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed.Cir. 1996). Usually this intrinsic evidence alone will provide a sufficient basis for the Court's interpretation. *See Pall Corp. v. Micron Separations, Inc.,* 66 F.3d 1211, 1216 (Fed. Cir.1995). However, in cases in which this intrinsic evidence is not sufficient, the court may consider extrinsic evidence such as "expert and inventor testimony, dictionaries, and learned treatises," provided that such extrinsic evidence does not contradict the claims themselves, *Markman,* 52 F.3d at 980–981.

### Discussion

Defendant has moved for the Court to interpret a critical phrase of claim 1 of the '862 patent. This phrase of claim 1 is as follows:

"said top portion having at least a substantially horizontal segment a tangential plane of which is inclined with respect to the horizontal at an angle which is less than or equal to approximately $\tan^{-1} [2(H-h)/x]$ and greater than or equal to zero, where H represents the vertical distance from the roof of the cab portion to the top of the front wall of a van portion for which the

---

*Ward,* 955 F.2d 875, 899 (4th Cir.1992). Judicial estoppel is designed to prevent parties from playing "fast and loose" with the courts, and as such, the doctrine protects "the essential integrity of the judicial process." *Allen v. Zurich Ins. Co.,* 667 F.2d 1162, 1166 (4th Cir.1982).

drag reduction performance of said fairing is optimized, h represents the height of said fairing, x represents the distance between the rear portion of said fairing and the front of said van portion, and h has a value which is greater than or equal to about 0.9H and less than or equal to about H, and greater than or equal to about $0.8H_L$ and less than or equal to about $1.4H_L$, where $H_H$ and $H_L$ represent the vertical distances from the roof of said cab portion to the tops of the front walls of van portions which are higher and lower, respectively, than the top of said front wall of said van portion for which performance of said fairing is optimized."

Defendants move for the Court to interpret this phrase such that "the claimed substantially horizontal segment described in claim 1 of the patent-in-suit cannot be inclined from horizontal more than slightly, that is, a few degrees." Defendants also request a ruling "that the value of h, as set froth in the claims of the patent-in-suit, is greater than or equal to the about 0.9 H and less than or equal to about H, since the $0.8H_H$ and $1.4H_L$ values do not fall within the stated 0.9H and H range." Defendants' Motion at 2.

Claim 1 of the patent describes a fairing which is mounted on the roof of the truck cab portion of a load carrying vehicle in order to reduce aerodynamic drag. Claims 2–14 are dependent claims, resting upon claim 1. As noted above, Defendants essentially request two interpretations from the court: (1) that the claimed substantially horizontal segment cannot be inclined from horizontal more than slightly, that is, a few degrees; and (2) that the value of h, as set froth therein, is greater than or equal to the about 0.9H and less than or equal to H, since the $0.8H_H$ and $1.4H_L$ values do not fall within the stated 0.9H and H range. The Court will address each of these in turn.

■ Regarding Defendants' argument that "the claimed substantially horizontal segment cannot be inclined from the horizontal more than slightly, that is, a few degrees," the Court has first examined the language of the claim itself, as directed by the Federal Circuit in *Vitronics,* 90 F.3d 1576, 1582 (Fed.Cir.1996). Claim 1 describes

"a substantially horizontal segment a tangential plane of which is inclined with respect to the horizontal at an angle which is less than or equal to approximately $\tan^{-1} [2(H-h)/x]$ and greater than or equal to zero." As further explained in the claim, H represents the vertical distance from the cab's roof to the top of the front wall of the van portion, h represents the height of the fairing itself, and x represents the distance between the rear of the fairing and the front of the van portion.

This plain language of the claim suggests that the angle of inclination can fall within a range of angles, from zero to the greatest angle satisfying the Arctan formula provided above. How great that angle can be is a function, therefore, of the relative values of H, h, and x. The specification provides that for ideal aerodynamic design, H and h should be substantially equal, thereby yielding an inclination angle of zero (as $\tan^{-1} (0/x) = 0$). However, the specification also addresses those less–than–optimal situations, providing that "to regain the loss in performance with $h < H$ ... the angle of this inclination be less than or equal to about $\tan^{-1} [2(-I-h)/x]$." *See* Buckley Decl., Ex. 2, Col. 8, line 56—Col. 9, line 2. Nowhere does the patent or its specification provide a limitation on the range which this Arctan formula may yield.

Defendants rely heavily on prosecution history. Specifically, Defendants argue that Buckley's use of the term "substantially horizontal segment" in applying for the patent demonstrates that this angle should be construed as no greater than a few degrees. Plaintiff contends that this phrase described only the appearance of the angle as viewed from the front of the fairing, while Defendants argue that this describes the view from the side. Even if the Court were to accept Defendants' position, however, the Court does not believe that the term "substantially horizontal" is necessarily limited to a few degrees. If Defendants were arguing that "substantially horizontal" should be construed to exclude angles greater than ninety degrees, the Court would not hesitate to accept their argument. However, the Court cannot embrace the proposition that the plain meaning of "substantially horizontal" is nec-

essarily limited to those angles not exceeding a few degrees. Defendants' arguments regarding prosecution history do not challenge the conclusion that the Court reached based on the claim and specification, as discussed above. For these reasons, the Court must deny Defendants' Motion insofar as it requests that the Court conclude "that the claimed substantially horizontal segment ... cannot be inclined from the horizontal more than slightly, that is, a few degrees." Motion at 2.

■ The Court will now address Defendants' request that the Court interpret the claim such "that the value of h, as set forth in the claims of the patent-in-suit, is greater than or equal to about 0.9H and less than or equal to about H, since the $0.8H_H$ and $1.4H_L$ values do not fall within the stated 0.9H and H range." Defendants' Motion at 2. As noted above, claim 1 defines $H_H$ and $H_L$ such that "$H_H$ and $H_L$ represent the vertical distances from the roof of said cab portion to the tops of the front walls of van portions which are higher and lower, respectively, than the top of said front wall of said van portion for which performance of said fairing is optimized." Defendants argue that the reference in claim 1 to $0.8H_H$ and $1.4H_L$ is "nonsensical, improper and renders the claim indefinite if read into the claim." Memorandum in Support of Motion at 15. Defendants support this argument with references to the prosecution history of the patent, arguing that the inconsistency of reference to these dimensions indicates that they were put in by mistake. Defendants claim that "The $0.8H_H$ and $1.4H_L$ dimensions do not fall within the 0.9H and H claimed limitations." Memorandum in Support of Motion at 16.

Having studied this portion of claim 1, the Court cannot accept Defendants' contention. Based on the plain language of the claim, the Court must reject Defendants' argument that "the $0.8H_H$ and $1.4H_L$ dimensions do not fall within the 0.9H and H claimed limitations." *Id.* As the claim specifies, $H_H > H$, and $H_L < H$. Thus, a range spanned by $0.8H_H$ and $1.4H_L$ may fall within the range of 0.9H and H, as the former range reduces below the increment of 0.9 the variable which is greater than H (ie: $H_H$) and increases above H the

variable which is less than H (ie: $H_H$). Thus, these two mathematical parameters for h ($0.9H < h < H$, and $0.8H_H < h, 1.4H_L$) can be satisfied together.

■ Defendants' arguments regarding the prosecution history of this portion of claim 1 cannot overcome the facial validity of this provision of claim 1, as described above, for it is a basic rule that the prosecution history "cannot 'enlarge, diminish, or vary' the limitations in the claims." *Markman*, 52 F.3d at 980. Consequently, the Court cannot read the $0.8H_H$ and $1.4H_L$ parameters out of claim 1, as Defendants' Motion essentially requests that the Court do. Accordingly, Defendants' Motion for Claim Interpretation will be denied on this second basis as well.

*III. Defendants' Motion for Partial Summary Judgment of Invalidity of Claims 1–15 of U.S. Patent No. 4,245,-862 as Being Indefinite Under 35 U.S.C. § 112*

*Legal Standard*

The general standard for summary judgment is discussed above with reference to Plaintiff's Motion for Partial Summary Judgment. In brief, summary judgment is governed by Fed.R.Civ.P. 56(c). Summary judgment is appropriate when there is no genuine dispute of material fact and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The party seeking summary judgment bears the burden of showing that there is no "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." 477 U.S. at 325, 106 S.Ct. at 2553–54.

■ Also relevant to this Motion is the legal standard for establishing patent invalidity. The presumption is that the patent is valid.–35 U.S.C. § 282. This presumption is never weakened, and the burden of proving invalidity remains with the party asserting invalidity. *ACS Hospital Systems, Inc. v. Montefiore Hospital*, 732 F.2d 1572, 1574–75 (Fed.Cir.1984); *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360

(Fed.Cir.1984). Compliance with the definiteness requirement set forth in 35 U.S.C. § 112 is a question of law. *Morton Int'l. v. Cardinal Chem. Co.,* 5 F.3d 1464, 1469 (Fed. Cir.1993). Defendants bear the burden of proving invalidity by "clear and convincing" evidence. *United States Gypsum Co. v. National Gypsum Co.,* 74 F.3d 1209, 1212 (Fed. Cir.1996).

 When possible, patent claims are to be interpreted in a manner that will uphold their validity. *See Whittaker Corp. v. UNR Indus., Inc.,* 911 F.2d 709, 712 (Fed. Cir.1990). Whether a patent claim is valid depends upon whether a person of ordinary skill in the art of the invention would understand the language of the patent claims along with the patent specification. *North American Vaccine, Inc. v. American Cyanamid Co.,* 7 F.3d 1571, 1579 (1993). As stated in *Shatterproof Glass Corp. v. Libbey–Owens Ford Co.,* 758 F.2d 613, 624 (Fed.Cir.1985), "[i]f the claims, read in the light of the specification, reasonably apprise those skilled in the art both of the utilization and scope of the invention, and if the language is as precise as the subject matter permits, the courts can demand no more." *Shatterproof Glass Corp. v. Libbey–Owens Ford Co.,* 758 F.2d 613, 624 (Fed.Cir.1985). *See also Credle v. Bond,* 25 F.3d 1566, 1576 (Fed.Cir.1994).

### Discussion

As an initial matter, the Court has determined (as set forth above) that Defendants are barred by *res judicata* from contesting the validity of the '862 Patent. This determination alone, and the Court's consequent granting of Plaintiff's Motion for Partial Summary Judgment, would bar the Court from granting Defendants' Motion. Nonetheless, the Court has reviewed the arguments submitted by Defendants in support of this Motion, and the Court finds that this Motion would be denied on substantive grounds as well.

 Defendants argue that the '862 patent is invalid for two reasons. First, Defendants argue that claim 1 and dependent claims 2–15 are indefinite because a person with ordinary skill in the art would not be able to determine what would constitute an infringement of the patent. Defendants assert that "A fairing of deflector is normally sold to truck dealers or owners by Defendants without any knowledge as to what height trailer the truck may pull. The truck could very well pull trailers having heights between 12'0" and 13'6". Further, the truck could pull a flatbed trailer at times .... [t]here is absolutely no way for Defendants to anticipate the cab height, trailer height or trailer gap." Defs. Memo. pp. 4–5.

As Plaintiff notes, however, Defendant has presented no evidence in support of any of these factual assertions, as required for summary judgment under Fed.R.Civ.P. 56(c). Defendants request in their Reply that the Court take judicial notice of the variation among truck heights, trailer heights, and gap sizes. However, the Court believes that the relevant issue is not only whether these vary, but also whether these (cab height, trailer height, and gap size) can be anticipated. Plaintiff argues that the contention that these cannot be anticipated is in direct contradiction to sworn testimony given by employees of Airshield USA in this action and in previous litigation. Plaintiff argues that the deposition of William Jensen demonstrates that Airshield USA designs its fairings for use on specific tractor models and that the fairings are adapted to be mounted on particular trucks. *See* Plaintiff's Opposition at 10 and Tab 1 attached thereto. Plaintiff also contends that prior court testimony of Nathaniel C. Wiley directly contradicts Defendants' position. See Plaintiff's Opposition at 10–11 and Tab 2 attached thereto. Considering this evidence, the Court concludes that there is at least a question of material fact surrounding Defendants' assertion that "There is absolutely no way for Defendants to anticipate the cab height, trailer height or trailer gap." Def. Memo. at 4–5. Consequently, even without the bar imposed by *res judicata,* the Court would not grant summary judgment based on Defendants' first argument.

Defendants' second argument in support of their Motion surrounds the two separate mathematical parameters for the variable h. Defendants assert, as they did in their Motion for Claim Interpretation, that these two ranges are incompatible. In the Court's discussion of the Motion for Claim Interpreta-

tion, the Court addressed this argument, and determined that it could not grant Defendants' request for an interpretation that these two ranges are incompatible. The Court will not repeat that analysis here, but the Court's conclusion with reference to the Motion for Claim Interpretation applies to this Motion as well. Consequently, this argument by Defendants has not convinced the Court that summary judgment for Defendants would be appropriate even if the *res judicata* bar were not applicable.

### Conclusion

For the reasons stated, the Court will grant Plaintiff's Motion for Partial Summary Judgment on Validity, Enforceability, and Defendants' Infringement of U.S. Patent No. 4.245,862 Based Upon Judicial Estoppel and *Res Judicata;* will deny Defendants' Motion for Claim Interpretation; and will deny Defendants' Motion for Partial Summary Judgment on Invalidity of Claims 1–15 of U.S. Patent No. 4,245,862 as Being Indefinite Under 35 U.S.C. § 112. A separate Order consistent with this Memorandum Opinion will issue.

### ORDER

In accordance with the Memorandum Opinion, it is this 27th day of August, 1997, ORDERED:

1. That Plaintiff's Motion for Partial Summary Judgment on Validity, Enforceability, and Defendants' Infringement of U.S. Patent No. 4,245,862 Based Upon Judicial Estoppel and *Res Judicata* BE, and the same hereby IS, GRANTED;

2. That Defendants' Motion for Claim Interpretation BE, and the same hereby IS, DENIED;

3. That Defendants' Motion for Partial Summary Judgment of Invalidity of Claims 1–15 of U.S. Patent No. 4,245,862 as Being Indefinite Under 35 U.S.C. § 112 BE, and the same hereby IS, DENIED; and

4. That the Clerk of the Court mail copies of this Order and the Memorandum Opinion to all counsel of record.