# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

SHERIFF SAUDI,

*Plaintiff-Appellant,*

v.

V. SHIP SWITZERLAND, S.A., formerly
known as Acomarit Services
Maritimes, S.A.; AMERICAN
AUTOMAR, INCORPORATED,

*Defendants-Appellees.*

No. 03-1307

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CA-02-1722-AW)

Argued: January 21, 2004

Decided: March 31, 2004

Before WIDENER, LUTTIG, and WILLIAMS Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Joe Alfred Izen, Jr., Bellaire, Texas, for Appellant.
Thomas R. Nork, BELL, RYNIKER, LETOURNEAU & NORK,
P.C., Houston, Texas, for Appellees. **ON BRIEF:** Keith B. Letour-
neau, BELL, RYNIKER, LETOURNEAU & NORK, P.C., Houston,
Texas, for Appellees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

After suffering injuries in an accident on the high seas, appellant, Captain Sheriff Saudi, brought this admiralty action in the United States District Court for the District of Maryland against appellees V. Ship Switzerland, S.A., formerly known as Acomarit Services Maritimes S.A. (Acomarit), and American Automar, Inc. (Automar), raising claims of negligence and premises liability. The district court granted Acomarit's motion to dismiss for lack of personal jurisdiction and also granted Automar's motion for summary judgment. For the reasons that follow, we affirm.

### I.

Since the accident that gives rise to this litigation occurred, Captain Saudi has brought suit in no fewer than five jurisdictions to recover for his injuries. *See Saudi* v. *Acomarit Maritimes Services, S.A.*, 245 F. Supp. 2d 662 (E.D. Pa. 2003) (maritime negligence action); *Saudi* v. *Northrop Grumman Corp.*, 273 F. Supp. 2d 101 (D.D.C. 2003) (products liability action); *Saudi* v. *Valmet-Appleton, Inc.*, 219 F.R.D. 128 (E.D. Wis. 2003) (products liability action); *Saudi* v. *S/T Marine Atlantic*, 2001 WL 893871 (S.D. Tex. Feb. 20, 2001) (maritime negligence action).

In his complaint before the district court in this case, Captain Saudi alleges that he was injured on May 17, 1999, when a crane, which was offloading Saudi in a basket from the S/T Marine Atlantic, a large crude oil tanker moored in the Gulf of Mexico, collapsed onto a tender vessel floating nearby. As a result, Captain Saudi was dropped approximately fifty feet into the Gulf of Mexico. Though Captain Saudi managed to leap clear of the basket, he claims that the wire support cable of the jib of the collapsed crane lashed him as he fell, and that he suffered extensive injuries.

According to Captain Saudi, Acomarit, a Swiss ship management corporation headquartered in Geneva, managed the Marine Atlantic for at least three years prior to the date of his accident, and Automar, a Maryland corporation headquartered in Bethesda, controlled the premises of the Marine Atlantic jointly with Acomarit. J.A. 7, 9. He also claims that Acomarit maintained a port captain, Thomas Garrett, who at some point came aboard the Marine Atlantic and inspected the very crane which collapsed to cause the accident. And he further asserts that Automar exercised control over Garrett's actions, jointly with Acomarit, through Garrett's nominal employer Osprey Acomarit Ship Management, Inc. (Osprey), in which Automar and Acomarit were formerly both shareholders but which has been a wholly-owned subsidiary of Automar since December 1998. J.A. 6-7, 289.

Captain Saudi contends that because Garrett's inspection failed to uncover the defects which would later cause the crane to collapse, and because appellees' maintenance of the Marine Atlantic obviously did not prevent the collapse from occurring, appellees breached their "duty to inspect and/or maintain the crane in question and to keep it in proper condition for ordinary use." J.A. 7. For the injuries he has suffered, Captain Saudi claims he is entitled to an award of two million dollars in actual damages, and no less than ten million dollars in punitive damages. J.A. 10.

Ruling from the bench after a hearing, the district court granted Acomarit's motion to dismiss for lack of personal jurisdiction and also granted Automar's motion for summary judgment. J.A. 433-51. Captain Saudi then timely appealed.

## II.

Captain Saudi asserts first that the district court erred in granting Acomarit's motion to dismiss for lack of personal jurisdiction. In explaining its grant of Acomarit's motion to dismiss, the district court stated the following:

> [T]here's nothing in this record that has been presented to this Court that would show that [Acomarit] has availed itself to the personal jurisdiction of this Court, not generally nor specifically.

They don't do business here. They're not registered to conduct business here. There's no agent for service of process here. They have not purchased or sold any goods here. They have not advertised any services or goods in any medium that I know of in Maryland. They don't own or lease any property in Maryland. They have never solicited any business in Maryland. There simply is no what we call continuous or systematic contacts or connections here in Maryland.

This alleged relationship by Mr. Garrett with [Acomarit and Automar] is just that. It's an allegation, which is, of course, disputed by [Acomarit]. But even as argued or articulated here, it doesn't give rise or create any connection or contact with Maryland sufficient to give rise to any personal jurisdiction.

This accident occurred . . . in the Gulf of Mexico, 60 miles off of Texas, and this defendant, [Acomarit], has no connection here in Maryland . . . [T]here's no basis for this federal court to permit any suit against [Acomarit] to go on. It's just not here, no personal jurisdiction. I will grant the motion to dismiss.

J.A. 438-40. For the reasons stated by the district court, with which we can find no fault, we affirm the district court's order dismissing Captain Saudi's claims against Acomarit for lack of personal jurisdiction.

### III.

Next, Captain Saudi contends that the district court erred in granting summary judgment to Automar because, in so ruling, the court relied on a decision adverse to Saudi from the Southern District of Texas, in a lawsuit previously filed by Saudi against Acomarit and other defendants including Automar's now wholly-owned subsidiary Osprey, which "should not be given *collateral estoppel* or *issue preclusive* effect." *Appellant's Reply Br.* at 5 (emphases added). Appellees, meanwhile, urge affirmance on the ground that the district court properly relied on the Texas decision to hold Saudi *collaterally estop-*

*ped* from arguing that appellees' actions were the proximate cause of Saudi's injuries. *Appellees' Br.* at 13.

By focusing on collateral estoppel, we believe the parties have misunderstood the district court's oral ruling, albeit understandably.

In explanation of its order of summary judgment, the district court stated the following:

> [T]he very issue of negligence and carelessness involving the players and the parties and subsidiaries has been litigated, particularly in the federal court in Texas, and that judge made a ruling . . . that the conduct and activities by the parties here did not amount to negligence and . . . was too attenuated and no real proximate cause in connection with the injury and the acts and conduct associated with those parties. . . .
>
> I think the decision [for] the subsidiary [Osprey] is for all intent and purposes a decision for the parent company [Automar], the entity that is before this Court now. *That's how res judicata works.* I think I'm bound by that decision in Texas under those principles of finality.

J.A. 448-49 (emphasis added). In this critical passage, the district court spoke expressly of "res judicata,"[1] and never invoked the phrase

---

[1]The capacious term "res judicata," which is Latin for "a matter adjudged," *Black's Law Dictionary* 1305 (6th ed. 1990), *can* be used to refer both to "claim preclusion," under which an earlier action between parties will bar later actions between the same parties or their privies with respect to the same occurrence involved in the first action, or to "issue preclusion" (also known as "collateral estoppel"), under which the actual determination of a litigated issue in one proceeding will bar the relitigation of that same issue in a later proceeding by a party which had a full and fair opportunity to litigate it in the earlier proceeding. *See In re: Microsoft Corp. Antitrust Litigation*, 355 F.3d 322, 325-26 (4th Cir. 2004); *see generally Hart & Wechsler's The Federal Courts and the Federal System* 1406-07 (5th ed. 2003). The term "res judicata" is often used, however, and perhaps most commonly used, in a narrower sense to denote only "claim preclusion" as distinguished from "issue preclusion." *See*, *e.g.*, *Migra* v. *Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984); *In re: Bridgestone/Firestone, Inc.*, 333 F.3d 763, 767 (7th Cir. 2003); *In re: Erlewine*, 349 F.3d 205, 210 (5th Cir. 2003).

"collateral estoppel" or "issue preclusion." In addition, the court emphasized the fact that Automar and Osprey were in privity with each other, a relationship relevant to claim preclusion, and irrelevant to issue preclusion, *compare Grausz* v. *Englander*, 321 F.3d 467, 472 (4th Cir. 2003) (setting forth the elements of claim preclusion), *with Sedlack* v. *Braswell Serv. Group, Inc.*, 134 F.3d 219, 224 (4th Cir. 1998) (setting forth the elements of issue preclusion). *See* J.A. 445 ("I think that you have some problems with what we call parties and privities right now."); *id.* at 449 ("I think the decision against the subsidiary is for all intent and purposes a decision for the parent company, the entity that is before this Court now.").

The court did also reference the fact that the "issue of negligence and carelessness involving the players and the parties and subsidiaries has been litigated," a reference which, to be sure, could suggest that the court intended to rely upon issue preclusion, rather than claim preclusion. We believe, however, that, given the district court's express invocation of the term of art "res judicata" and its unequivocal discussion of the privity between Automar and Osprey, the best understanding of the court's order is that it in fact rests on claim preclusion.

Having said as much, the district court's reliance on claim preclusion is somewhat problematic under the circumstances. Claim preclusion is an affirmative defense which must be raised by the defendant in its response or else waived under Federal Rule of Civil Procedure 8(c), *see Am. Furniture Co., Inc.* v. *Int'l Accommodations Supply* 721 F.2d 478, 482-83 (5th Cir. 1983), and appellees did not themselves raise the defense of claim preclusion in their submissions. Thus, the district court's invocation of claim preclusion here was *sua sponte*, which generally is disfavored. *See*, *e.g.*, *Carbonell* v. *Louisiana Dept. of Health & Human Resources*, 772 F.2d 185, 189 (5th Cir. 1985) (observing that a district court may raise claim preclusion *sua sponte* only in cases where the previous action was litigated in the same district or in cases "in which all relevant data and legal records are before the court and the demands of comity, continuity in the law, and essential justice mandate judicial invocation of the principles of res judicata"). Nonetheless, given the indisputable privity of the parties and the identity of the issues between the instant case and the case upon which the *res judicata* holding rested, we believe that *sua sponte* invocation of the bar was permissible.

Turning to the question of whether the district court's holding of *res judicata* was correct, we believe that it was. According to the claim preclusion principles developed in the case law of this circuit a later claim is precluded by a prior judgment when (i) the prior judgment was final, on the merits, and rendered by a court of competent jurisdiction in accordance with due process; (ii) the parties in the two actions are either identical or in privity; and (iii) the claim in the second action is based upon the same cause of action involved in the earlier proceeding. *See Grausz*, 321 F.3d at 472.

Each of these elements is satisfied here. With respect to the first, the Texas district court clearly reached a final decision on the merits when it granted Osprey's motion for summary judgment against Saudi on Saudi's maritime negligence and unseaworthiness claims. *See Saudi* v. *S/T/ Marine Atlantic*, 2001 WL 893871, *6 (S.D. Tex. Feb. 20, 2001), *aff'd*, 2003 WL 22838776 (5th Cir. Dec. 1, 2003). With respect to the second, we have no trouble concluding that Automar was in privity with its wholly-owned subsidiary Osprey for the purposes of claim preclusion where, as here, Saudi himself argues that Osprey is a "mere corporate vehicle" controlled entirely by Automar, J.A. at 18-19. *See Robinson* v. *Volkswagenwerk AG*, 56 F.3d 1268, 1275 (10th Cir. 1995) (holding that adverse party's own allegations of a controlling, "near alter ego" relationship between parent and subsidiary were sufficient to establish privity between the two corporations for the purposes of claim preclusion); *see also Whitehead* v. *Viacom*, 233 F. Supp. 2d 715, 721 (D. Md. 2002) (holding a parent company and its wholly-owned subsidiary to be in privity for purposes of res judicata); *Buckley* v. *Airshield Corp.*, 977 F. Supp. 375, 378-79 (D. Md. 1997) (same). And with respect to the third, this case obviously involves the same cause of action for purposes of claim preclusion, because both this action and the Texas action arise out of the same core of operative facts — namely, the accident in which the defective crane on the Marine Atlantic collapsed, causing Captain Saudi's injuries. *See Grausz*, 321 F.3d at 473; *see also Keith* v. *Aldridge*, 900 F.2d 736, 740 (1990) ("[T]he appropriate inquiry is whether the new claim arises out of the same transaction or series of transactions as the claim resolved by the prior judgment.").

Accordingly, the district court did not err in holding that the doctrine of claim preclusion barred Saudi from bringing the present

action against Automar. In the words of the district court, "the decision [for] the subsidiary [Osprey] is for all intent and purposes a decision for the parent company [Automar]." J.A. 449.

## CONCLUSION

For the reasons stated herein, the judgment of the district court is affirmed.

*AFFIRMED*