B–S STEEL OF KANSAS,
INC., Plaintiff,

v.

TEXAS INDUSTRIES, INC.,
et al., Defendants.

Chaparral Steel Midlothian,
L.P., Plaintiff,

v.

B–S Steel Of Kansas, Inc., Defendant

Nos. 01–2410–JAR, 03–2664–JAR.

United States District Court,
D. Kansas.

July 9, 2004.

Order Supplementing Prior
Order July 29, 2004.

Order Denying Reconsideration
July 29, 2004.

James R. Eiszner, Shook, Hardy & Bacon L.L.P., Kansas City, MO, for Plaintiff.

David A. Rameden, Jerrod A. Westfahl, Shook, Hardy & Bacon L.L.P., Overland Park, KS, Dennis D. Palmer, Shughart Thomson & Kilroy, PC, Kansas City, MO, for Plaintiff and Defendants.

George E. Leonard, Jonathan H. Gregor, Shughart Thomson & Kilroy, PC, Kansas City, MO, for Defendants.

John A. Vering, III, Armstrong Teasdale LLP, Kansas City, MO, for Interested Party.

*MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION TO STAY*

ROBINSON, District Judge.

This matter comes before the Court on defendants' Motions for Summary Judgment on Plaintiff's claims (Docs. 229 and 237). Defendants Texas Industries, Inc., Chaparral Steel Texas, Inc., and Chaparral Steel Company (hereinafter defendants) urge that Plaintiff B–S Steel of Kansas, Inc.'s (B–S Steel) claims are barred by the doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion). Additionally, defendants suggest that any damage from B–S Steel's purchases after April 3, 2001 is de minimis; that B–S Steel lacks standing to obtain injunctive relief; and that B–S Steel's damage expert's testimony is inadmissable. Also before the Court is defendants' Motion to Stay (Doc. 297). For the reasons stated below, the summary judgment motions are granted in part and denied in part, and the motion to stay is denied as moot.

## I. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."[1] The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[2] Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided

---

1. Fed.R.Civ.P. 56(c).

2. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

that one party must prevail as a matter of law."[3]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case.[4] Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial.[5] "A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial."[6] Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.[7] The Court must consider the record in the light most favorable to the nonmoving party.[8]

The Court notes that summary judgment is not a "disfavored procedural shortcut"; rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[9]

## II. Facts

The following facts are either uncontroverted or related in the light most favorable to the nonmoving party.

On August 15, 2001, B–S Steel filed suit in Case No. 01–2410, naming as defendants Texas Industries, Inc. (TXI) and Chaparral Steel Company (CSC). B–S Steel filed an amended complaint on December 6, 2001, naming as additional defendants Chaparral Steel Texas, Inc. and Chaparral Steel Midlothian (Midlothian). The defendants are related entities. TXI owns 100% of the common stock of CSC. In turn, CSC owns 100% of the common stock of Chaparral Steel Texas. CSC also owns 100% of the common stock of Chaparral Steel Holdings, Inc. (CSHI). CSHI owns 100% of the beneficial interest in Chaparral Steel Trust (CST). CST owns a 99% limited partnership interest in Midlothian. In addition, Chaparral Steel Texas owns a 1% general partnership interest in Midlothian.

B–S Steel's amended complaint alleged that TXI, CSC, Chaparral Steel Texas and Midlothian committed various violations of state and federal law by entering into a "secret deal" to sell steel at a lower price to B–S Steel's competitors. Specifically, B–S Steel alleges defendants violated section 2(a) of the Clayton Act, as amended by the Robinson–Patman Act (R–P Act), 15 U.S.C. § 13(a). B–S Steel alleges those violations entitle it to treble its actual damages pursuant to § 4 of the Clayton Act,[10] permanent injunctive relief pursuant to § 16 of the Clayton Act,[11] and an award of its costs and reasonable attorneys' fees. B–S Steel also alleges defendants committed common law fraud, misrepresentation, and tortious interference with B–S Steel's prospective business relations, entitling it to an award of its actual damages and punitive damages.

---

3. *Id.* at 251–52, 106 S.Ct. 2505.

4. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

5. *See Anderson,* 477 U.S. at 256, 106 S.Ct. 2505.

6. *Id.*

7. *See id.*

8. *See Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985).

9. *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

10. 15 U.S.C. § 15(a).

11. 15 U.S.C. § 26.

By its Order dated September 3, 2002,[12] this Court referred B–S Steel's claims against Midlothian, which were based on transactions occurring before April 3, 2001, to arbitration pursuant to the Conditions of Sale Contract between B–S Steel and Midlothian. This Court found in its Order that the Conditions of Sale Contract signed in February 1997 and effective after July 1, 1996 was "valid and enforceable."

B–S Steel voluntarily dismissed Midlothian on September 17, 2002. On that same day, B–S Steel informed Midlothian by letter that it was unwilling to proceed to arbitration. Subsequently, Midlothian filed a Demand for Arbitration with the American Arbitration Association seeking an order declaring that Midlothian was not liable to B–S Steel on its claims against Midlothian.

On November 12, 2002, B–S Steel filed counterclaims in the arbitration against Midlothian, which were based on the same transactions and representations that the original claims in B–S Steel's amended complaint were based upon. B–S Steel counterclaims included: (1) a counterclaim under the R–P Act, Title 15, U.S.C. § 13(a), alleging price discrimination by Midlothian in the sale of steel beams to B–S Steel's competitors and seeking treble damages, injunctive relief and attorneys fees; (2) a claim for fraud and misrepresentation based on the alleged denials of Midlothian's agents that B–S Steel's competitors were receiving more favorable pricing; (3) a claim for violation of the Texas Deceptive Trade Practices Act; and (4) a claim for tortious interference.

The arbitration was conducted from July 28, 2003 through August 7, 2003 by a three member panel of arbitrators; there were eight and half days of evidence presented by the testimony of witnesses and many exhibits. B–S Steel called thirteen witnesses live, designated deposition testimony of another seventeen witnesses and called three live witnesses in its rebuttal case after Midlothian rested. Additionally, B–S Steel cross-examined each witness called by Midlothian.

At the arbitration, both B–S Steel and Midlothian presented evidence concerning the Agreements with alleged "favored buyers," the basis of B–S Steel's claim for price discrimination in violation of the R–P Act. They both presented evidence regarding B–S Steel's claim, including testimony about whether representatives of Midlothian made statements denying the existence of special pricing with B–S Steel's competitors.

On November 21, 2003, the arbitrators issued a 39 page, single-spaced arbitration award. The arbitrators awarded "full relief to Chaparral Steel Midlothian, LP on its declaratory judgment action and grant[ed] no award to B–S Steel of Kansas, Inc. on its counterclaim for violation of the R–P Act, common law fraud, or violation of the Texas Deceptive Trade Practices Act."

Following the issuance of the arbitration award, Midlothian filed a motion to confirm the arbitration award in the District of Kansas and B–S Steel filed a motion to vacate the award in the Northern District of Texas. In the Texas court, Midlothian moved to transfer B–S Steel's motion to vacate to the District of Kansas, pursuant to 28 U.S.C. § 1404. On May 10, 2004, Judge Sam Lindsay ordered the Texas case transferred to the District of Kansas. In its Order dated June 15, 2004,[13] this

---

**12.** *B–S Steel of Kansas, Inc. v. Texas Indus., Inc.,* 229 F.Supp.2d 1209 (D.Kan.2002).

**13.** Memorandum and Order Denying Motion to Vacate and Granting Motion to Confirm

Court denied B–S Steel's motion to vacate the arbitration award and granted Midlothian's motion to confirm the award.

## III. Discussion

Defendants seek summary judgment on all of B–S Steel's claims on various grounds. Defendants suggest that: (1) all of B–S Steel's claims are barred by the doctrine of res judicata; (2) B–S Steel's R–P Act claim arising from post April 3, 2001 transactions is barred by collateral estoppel; (3) any damage from B–S Steel's purchases after April 3, 2001 is de minimis; (4) B–S Steel lacks standing to obtain injunctive relief; and (5) B–S Steel's damage expert's testimony is inadmissable.

## A. Res Judicata

Defendants urge that summary judgment be granted on B–S Steel's claims on the basis of res judicata. In response, B–S Steel argues that the arbitration award is not a final judgment, several of its claims were not submitted to the arbitrators, and the equitable principles of res judicata do not compel summary judgment.

■ One of the main policy considerations underlying res judicata is the interest in bringing litigation to an end.[14] "By preventing repetitious litigation, application of res judicata avoids unnecessary expense and vexation for parties, conserves judicial resources, and encourages reliance on judicial action."[15] Under the doctrine

of res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in the prior action.[16] To apply res judicata, "three elements must exist: (1) a final judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits."[17] Defendants bear the burden to set forth facts sufficient to satisfy each element.[18]

### 1. Final Judgment on the Merits

■ B–S Steel argues that the arbitration award is not a final judgment on the merits because the arbitrators lacked jurisdiction and, therefore, the award is void ab initio. This Court has repeatedly considered and rejected B–S Steel's argument,[19] and the Court's previous rulings are law of the case. The law of the case dictates that a court's previous rulings "should continue to govern the same issues in subsequent stages in the same case."[20] As such, the Court declines to revisit this issue.

■ The Court determines that the arbitration award is a final judgment on the merits. An arbitration award can be given preclusive effect,[21] and should be in this case because the arbitration was akin to a full-blown trial. The arbitration was conducted from July 28, 2003 through August 7, 2003 in front of a three member panel of

---

Arbitration Award, Case No. 01–2410, Doc. 304.

**14.** *Nwosun v. Gen. Mills Restaurants, Inc.,* 124 F.3d 1255, 1258 (10th Cir.1997).

**15.** *Id.*

**16.** *Wilkes v. Wyoming Dep't of Employment,* 314 F.3d 501, 503–04 (10th Cir.2002).

**17.** *Id.* at 504.

**18.** *Nwosun,* 124 F.3d at 1257.

**19.** *See* Memorandum and Order Denying Motion to Dismiss, Case No. 03–2664, Doc. 15; Memorandum and Order Denying Motion to Vacate and Granting Motion to Confirm Arbitration Award, Case No. 01–2410, Doc. 304.

**20.** *McIlravy v. Kerr–McGee Coal Corp.,* 204 F.3d 1031, 1034 (10th Cir.2000).

**21.** *See Coffey v. Dean Witter Reynolds Inc.,* 961 F.2d 922, 925 n. 4 (10th Cir.1992).

arbitrators; there were eight and half days of evidence presented by the testimony of witnesses and many exhibits. B–S Steel called thirteen witnesses live, designated deposition testimony of another seventeen witnesses and called three live witnesses in its rebuttal case after defendant rested. Additionally, B–S Steel cross-examined each witness called by Midlothian at the arbitration.

At the arbitration, both B–S Steel and Midlothian presented evidence concerning the Agreements with alleged "favored buyers" providing for rebates, the basis of B–S Steel's claim for price discrimination in violation of the R–P Act. Evidence concerning B–S Steel's fraud claim was also presented by both B–S Steel and Midlothian, including testimony about whether representatives of Midlothian made statements denying the existence of special pricing with B–S Steel's competitors.

On November 21, 2003, the arbitrators issued a 39 page, single-spaced arbitration award. The arbitrators awarded "full relief to Chaparral Steel Midlothian, LP on its declaratory judgment action and grant[ed] no award to B–S Steel of Kansas, Inc. on its counterclaim for violation of the R–P Act, or common law fraud." The arbitrators found that B–S Steel had failed to meet its evidentiary burdens on both injury and quantification of damages on its R–P Act claim. Similarly, the arbitrators denied B–S Steel's fraud claim because B–S Steel had failed to prove damages by clear and convincing evidence. After reviewing the conclusions of law and fact set forth in the arbitration award, this Court confirmed the award. Certainly, the arbitration award is a final judgment on the merits.[22] Thus, the arbitrators finding against B–S Steel on its R–P Act and fraud claims is entitled to res judicata effect if defendants show that there is identity of the parties or their privies and identity in the causes of action.

### 2. Identity of Parties or Privies

■■ B–S Steel also argues that privity is lacking, apparently because the defendants were not parties to the agreement mandating arbitration. But, privity does not require the plaintiff and defendant to be parties to an agreement. "Privity requires, at a minimum, a substantial identity between the issues in controversy and showing [that] the parties in the two actions are really and substantially in interest the same."[23] There is no definition of privity which can be automatically applied in all cases involving the doctrine of res judicata.[24] But, courts have found a parent company and its wholly owned subsidiary to be in privity for the purposes of res judicata.[25] Likewise, an adverse party's own allegations of a controlling "near alter ego relationship is sufficient to establish privity between two related corporations."[26]

■ The Court determines that defendants are in privity with Midlothian. Defendant TXI owns 100% of the common stock of defendant CSC. In turn, CSC owns 100% of the common stock of defen-

**22.** See Coffey v. Dean Witter Reynolds Inc., 961 F.2d 922, 927–28 (10th Cir.1992) (holding that a confirmed arbitration award is a final judgment on the merits).

**23.** Lowell Staats Mining Co. v. Philadelphia Elect. Co., 878 F.2d 1271, 1275 (10th Cir. 1989).

**24.** Id. at 1274–75.

**25.** Buckley v. Airshield Corp., 977 F.Supp. 375, 378–79 (D.Md.1997); In re Teltronics Servs., Inc., 762 F.2d 185, 191–92 (2d Cir. 1985); Aetna Cas. & Sur. Co. v. Kerr–McGee Chem. Corp., 875 F.2d 1252, 1259–60 (7th Cir.1989).

**26.** Robinson v. Volkswagenwerk AG, 56 F.3d 1268, 1275 (10th Cir.1995).

dant Chaparral Steel Texas. CSC also owns 100% of the common stock of Chaparral Steel Holdings, Inc. (CSHI). CSHI owns 100% of the beneficial interest in Chaparral Steel Trust (CST). CST owns a 99% limited partnership interest in Midlothian. In addition, Chaparral Steel Texas owns a 1% general partnership interest in Midlothian. Thus, the undisputed facts show that defendants are in a parent-subsidiary relationship with Midlothian and the inter-corporate relationships put defendants in privity with Midlothian for purposes of res judicata.

Defendants also stress that B–S Steel has repeatedly referred to defendants as closely related to Midlothian or in privity with Midlothian. B–S Steel responds that "many of these statements were made prior to discovery and are preempted by the Pretrial Order." However, B–S Steel's factual contentions in the Pretrial Order entered on December 22, 2003, following the conclusion of the arbitration, provide in pertinent part: "Defendants are WFB producers and sellers under the Robinson Patman Act." They produce and sell WFB in their own right, *and they are in privity with Chaparral Steel Midlothian.* Hence, B–S Steel's argument fails and the Court determines that by virtue of the inter-corporate relationship between defendants and Midlothian, which has been continually stressed by B–S Steel, the entities are in privity.

*3. Identity of the Causes of Action*

▮ Lastly, defendants must establish that there is an identity of the causes of action. The Tenth Circuit has adopted the transactional approach to determine what constitutes a cause of action for res judicata principles.[27] The transactional approach provides that a final judgment extinguishes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.[28] Thus, under the transactional approach a cause of action includes all claims or legal theories of recovery that arise from the same transaction, event or occurrence.[29] All claims arising out of the same transaction must be presented in one suit or barred from subsequent litigation.[30]

▮ It cannot be disputed that B–S Steel tried the same claims in the arbitration as it brings in this case. In both cases, B–S Steel asserts violations of the R–P Act, based upon discounts given to favored buyers, as well as fraud and tortious interference claims. The only difference is B–S Steel's claim under the Deceptive Trade Practices Act, which was brought only in the arbitration. Additionally, the claims in the arbitration and those in this case are based upon the same transactions and events. The Court thus gives res judicata effect to B–S Steel's asserted violations of the R–P Act and its fraud claim, which the arbitrators denied.

▮ While B–S Steel included a claim for tortious interference with a business expectancy in its counterclaims filed in the arbitration, it declined to seek damages for this claim at the conclusion of the arbitration. B–S Steel does not explain why it chose not to seek damages for its tortious interference claim; in fact, it ne-

**27.** *Petromanagement Corp. v. Acme–Thomas Joint Venture,* 835 F.2d 1329, 1335 (10th Cir. 1988); *King v. Union Oil of Cal.,* 117 F.3d 443, 445 (10th Cir.1997).

**28.** *Petromanagement,* 835 F.2d at 1335; *Wilkes,* 314 F.3d at 504.

**29.** *Wilkes,* 314 F.3d at 504 (quoting *Nwosun,* 124 F.3d at 1257).

**30.** *Id.*

glected to even respond to defendants' argument. It is well-settled that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or *could have been raised in the prior action*.[31] This principle applies equally to claims arbitrated.[32] B–S Steel's tortious interference claim certainly could have been raised in the arbitration; indeed, it was asserted as a counterclaim. Additionally, the tortious interference claim springs from the same transaction, event, or occurrence as the claims determined by the arbitrators; it was the price reductions with favored buyers that B–S Steel asserts constituted tortious interference. Consequently, res judicata prohibits B–S Steel from relitigating its tortious interference claim in this suit.

Not all of B–S Steel's claims, however, are barred by the doctrine of res judicata. Both B–S Steel and defendants agree that post-April 3, 2001 purchases by B–S Steel were not subject to the arbitration. Indeed, the arbitrators stated that "the scope of the claims before the panel are limited to transactions occurring between the fourth quarter of 1999 and April 3, 2001. The panel's decision does not address any claims based on transactions between [Midlothian] and [B–S Steel] occurring after that date." Summary judgment thus cannot be granted on these claims on the basis of res judicata. Nor can summary judgment be granted on B–S Steel's claim for injunctive relief under the R–P Act because the arbitrators specifically declined to decide this claim.[33] The arbitrators wrote that "to render a decision on

whether [B–S Steel] has met its burden for purposes of injunctive relief would be advisory." Thus, there is no final judgment precluding this Court from deciding this claim.

■■■ The Court rejects B–S Steel's suggestion that the equitable principles of res judicata require the Court to refrain from giving preclusive effect to the arbitrated claims. The primary policy consideration underlying res judicata of bringing litigation to an end would not be served by giving B–S Steel "another bite at the apple." Moreover, the application of res judicata in this case avoids unnecessary expense and vexation for parties, conserves judicial resources, and encourages reliance on judicial action. Far from requiring the Court to refrain from applying res judicata, equity demands that the Court give preclusive effect to the arbitration award.

In sum, the Court grants summary judgment to defendants on B–S Steel's claims for: (1) deceptive trade practices in violation of the R–P Act; (2) fraud; and (3) tortious interference with a business expectancy relating to or arising from transactions prior to April 3, 2001 based on res judicata principles. The Court denies summary judgment for B–S Steel's R–P Act claim encompassing its post April 3, 2001 purchases, and its claim for injunctive relief.

## B. Collateral Estoppel—Post April 3, 2001 Damages

■■■ Defendants argue that the doctrine of collateral estoppel bars B–S Steel

---

**31.** *Wilkes,* 314 F.3d at 503–04; *Id.* at 504 (under the transactional approach a cause of action includes all claims or legal theories of recovery that arise from the same transaction, event or occurrence).

**32.** *See Siegel v. Daiwa Sec. Co., Ltd.,* 842 F.Supp. 1537, 1542 (S.D.N.Y.1994) (When claims either were or could have been pre-

sented and decided in the arbitration, the plaintiff is barred from pursuing them in the subsequent lawsuit).

**33.** *See United States v. Woodcrest,* 706 F.2d 70, 79 (2d Cir.1983) (when arbitrators decline to decide a claim or issue, the arbitration award has no preclusive effect on that claim or issue).

from relitigating its R–P Act claim arising from post April 3, 2001 damages. Specifically, defendants claim that because B–S Steel presented and the arbitrators considered the post April 2001 purchases in reaching their award, the issue of post April 2001 damages may not be considered anew by this Court.

The doctrine of collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." [34] The elements of collateral estoppel are: (1) the issue previously decided is identical with the one presented in the action in question; (2) the prior action has been finally adjudicated on the merits; (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication; (4) and the party against whom the doctrine is raised had a full and fair opportunity to litigate the issues in the prior action. [35]

B–S Steel does not contest that the damage issue decided by the arbitrators is the same issue before this Court. However, B–S Steel urges that the arbitrators' conclusions regarding damages is dicta and cannot be the basis for collateral estoppel. Dicta are "statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand." [36] Collateral estoppel

does not apply "if the issue was not necessary to the rendering of the prior judgment, and hence was incidental, collateral, or immaterial to that judgment." [37] Dicta must be distinguished, however, from a judgment based on alternative grounds. A judgment which is based on alternative grounds is an effective adjudication as to both and is collaterally conclusive as to both. [38]

B–S Steel suggests that the arbitrators' statement, appearing after the panel determined that B–S Steel had failed to prove antitrust injury, that "[t]he panel realizes that given its decision on antitrust injury, it need go no further," is pure dicta. The arbitrators proceeded, however, to discuss B–S Steel's evidence of damages, namely the testimony of its damage expert, over a span of almost four pages before concluding that B–S Steel "failed to meet its evidentiary burden on both injury and quantification of damages." Thus, although the arbitrators recognized that they need go no further, they proceeded to go further and base their conclusion on an alternate ground. Further, both the issues of antitrust injury and damages were essential to B–S Steel's claim, such that neither were dicta or merely incidental or immaterial to the arbitration award. The fact that the arbitrators chose to base their conclusion on alternate grounds, does not make the discussion regarding damages dicta. Rather, the thoroughness of

---

**34.** *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

**35.** *Harrison v. Eddy Potash, Inc.,* 248 F.3d 1014, 1022 (10th Cir.), *cert. denied,* 534 U.S. 1019, 122 S.Ct. 543, 151 L.Ed.2d 421 (2001).

**36.** *Rohrbaugh v. Celotex Corp.,* 53 F.3d 1181, 1184 (10th Cir.1995)

**37.** *P.A.T. Co. v. Ultrak, Inc.,* 948 F.Supp. 1518, 1521 (D.Kan.1996); *see also Keyes v.*

*Sch. Dist. No. 1, Denver, Colo.,* 119 F.3d 1437, 1446 n. 14 (10th Cir.1997).

**38.** *Schellong v. U.S. Immigration & Naturalization Serv.,* 805 F.2d 655, 658 (7th Cir. 1986), *cert. denied,* 481 U.S. 1004, 107 S.Ct. 1624, 95 L.Ed.2d 199 (1987); *Irving Nat'l Bank v. Law,* 10 F.2d 721, 724 (2d Cir.1926); *Johnson v. Eli Lilly & Co.,* 689 F.Supp. 170, 174 (W.D.N.Y.1988); Wright & Miller, 18 Fed. Prac. & Proc. Juris.2d § 4421 (West 2004).

the arbitrators' award makes the case for collateral estoppel stronger.

■ B–S Steel asserts that because its claims arising from post April 2001 transactions were not required to be arbitrated, the arbitrators lacked jurisdiction over the claims such that the arbitration was not a final adjudication on the merits. The arbitrators, however, did not adjudicate B–S Steel's post April 2001 claims. Rather, the arbitrators simply determined that B–S Steel had failed to prove antitrust damages on its R–P Act claim for transactions occurring before or after April 3, 2001, and in reaching that conclusion, the arbitrators considered all the evidence before them.[39] It is settled that "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit *on a different cause of action* involving a party to the first case." [40] Thus, even though the arbitrators did not adjudicate B–S Steel's post April 2001 R–P Act claim, they did decide that B–S Steel had suffered no damage, either before or after April 2001, from price discrimination. The arbitrators clearly had jurisdiction to decide the claims before them; that an issue decided in the arbitration precludes B–S Steel from asserting the same issue in this case does not implicate the jurisdiction of the arbitrators to decide that issue within the claims before them. Because B–S Steel is collaterally estopped from relitigating the issue of damages relating to its post April 3, 2001 purchases, and because proof of antitrust damages is essential to a R–P Act claim,[41] the Court grants summary judgment on B–S Steel's R–P Act claim for post April 2001 transactions.

Lastly, B–S Steel argues that collateral estoppel is improper because the arbitration was an unfair proceeding and directs the Court to its motion to vacate. The Court has since denied B–S Steel's motion to vacate concluding that the arbitrators conducted a fundamentally fair hearing, free of manifest legal errors and bias.[42] Consequently, B–S Steel's reliance on the motion to vacate is moot.

## C. De Minimis Damages

Defendants argue that summary judgment should be granted on B–S Steel's R–P Act claim for purchases after April 3, 2001 because any damage from those purchases is de minimis. The Court need not address this argument, in light of the preclusive finding by the arbitrators that B–S Steel suffered no damages from any purchases from Midlothian, including purchases before and after April 3, 2001.

## D. Standing to Obtain Injunctive Relief

■ Defendants suggest that B–S Steel lacks standing to pursue its claim for injunctive relief under § 16 of the Clayton Act.[43] Section 16 of the Clayton Act provides in part that "[a]ny person, firm, corporation, or association shall be entitled to sue for and have injunctive relief ...

---

39. Importantly, it was B–S Steel's damage expert that presented evidence of damages based upon the purchases from Midlothian from October 1999 to December 30, 2001, and estimated damages as late as June 2003.

40. *Matosantos Commercial Corp. v. Applebee's Int'l, Inc.*, 245 F.3d 1203, 1208 (10th Cir. 2001).

41. *See, e.g., J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 562, 101 S.Ct.

1923, 68 L.Ed.2d 442 (1981) (to recover damages under the R–P Act, a plaintiff must "make a showing of actual injury attributable to something the antitrust laws were designed to prevent").

42. Memorandum and Order Denying Motion to Vacate and Granting Motion to Confirm Arbitration Award, Case No. 01–2410, Doc. 304.

43. 15 U.S.C. § 26.

against threatened loss or damage by a violation of the antitrust laws."[44] To establish standing to bring a claim for an injunction, a plaintiff must show "threatened loss or damage of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful."[45] Although § 16 only requires proof of "threatened loss or damage," the threatened injury must be of the type that would entitle a plaintiff to compensation if the injury actually occurred.[46] Stated differently, § 16 affords private plaintiffs injunctive relief only for those injuries cognizable under § 4 of the Clayton Act, which provides for the recovery of treble damages.[47]

The Tenth Circuit has enumerated six factors relevant in determining whether a plaintiff has standing to pursue an antitrust claim:

(1) the causal connection between the antitrust violation and the plaintiff's injury; (2) the defendant's intent or motivation; (3) the nature of the plaintiff's injury—i.e., whether it is one intended to be redressed by the antitrust laws; (4) the directness or the indirectness of the connection between the plaintiff's injury and the market restraint resulting from the alleged antitrust violation; (5) the speculative nature of the damages sought; and (6) the risk of duplicative recoveries or complex damages apportionment.[48]

But, when pursuing a claim for injunctive relief under § 16, the risk of duplicative recovery and the complexity of apportioning damages are not proper factors, because "one injunction is as effective as 100, and concomitantly, [ ] 100 injunctions are no more effective than one."[49]

The Court need only address whether B–S Steel has shown antitrust injury, or threatened loss or damage of the type the antitrust laws were designed to prevent. B–S Steel suggests that it has shown an antitrust injury in the form of lost sales and lost margins. But the arbitrators considered these "injuries" in their award before concluding that B–S Steel "did not meet its burden of proof in demonstrating that it suffered antitrust injury, and so its claim for damages under [§ 4 of] the Clayton Act, based on a violation of the R–P Act, fails." Therefore, B–S Steel attempts to rest on the precise evidence considered and rejected by the arbitrators regarding its R–P Act claim. As this Court has previously discussed, the arbitrators' conclusion that B–S Steel failed to prove its R–P Act claim is res judicata. Hence, B–S Steel's reliance on injuries which are not cognizable under § 4 of the Clayton Act for permanent injunctive relief is improper and defendants' motion for summary judgment on this claim must be granted.[50]

---

44. *Id.*

45. *Cargill Inc. v. Monfort of Colo.*, 479 U.S. 104, 113, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986).

46. *Id.* at 112, 107 S.Ct. 484; *see also Reibert v. Atlantic Richfield Co.*, 471 F.2d 727, 731 (10th Cir.1973) (stating test as "(1) there is a causal connection between an antitrust violation and an injury sufficient to establish the violation as a substantial factor in the occurrence of damage; and (2) that the illegal act is linked to a plaintiff engaged in activities intended to be protected by the antitrust laws").

47. *Cargill*, 479 U.S. at 112, 107 S.Ct. 484, 93 L.Ed.2d 427.

48. *Roman v. Cessna Aircraft Co.*, 55 F.3d 542, 543 (10th Cir.1995).

49. *Cargill*, 479 U.S. at 111 n. 6, 107 S.Ct. 484, 93 L.Ed.2d 427.

50. The Court similarly rejects B–S Steel's contention that as a private attorney general, it has standing to seek injunctive relief, for even a private attorney general must satisfy the standing requirements.

## E. Damage Expert Testimony

Defendants urge that summary judgment is appropriate because the testimony of B–S Steel's damage expert is inadmissible such that B–S Steel is unable to prove that defendants' unlawful pricing and misrepresentations resulted in damages. Since this Court has already determined that the arbitrators' conclusion that B–S Steel had not proven its R–P Act or fraud claims is res judicata, and that summary judgment is appropriate on that ground, the Court need not address this argument.

## F. Motion to Stay

Defendants have also filed a motion to stay further activities and continue the trial pending a ruling on their motions for summary judgment. This Memorandum makes defendants' motion moot, and the motion is denied accordingly.

## IV. Conclusion

In sum, the Court grants summary judgment with respect to B–S Steel's claims for deceptive trade practices in violation of the R–P Act, fraud, and tortious interference with a business expectancy relating to or arising from transactions prior to April 3, 2001, based on res judicata principles. However, the Court denies summary judgment on the basis of res judicata for B–S Steel's fraud and tortious interference claims relating to transactions occurring after April 2001. Because the Court finds that B–S Steel is collaterally estopped from relitigating the issue of damages relating to its post April 3, 2001 purchases, the Court grants summary judgment on B–S Steel's R–P Act claim for this time period. The Court similarly grants summary judgment on B–S Steel's claim for permanent injunctive relief pursuant to § 16 of the Clayton Act because B–S Steel lacks standing.

The Court notes that summary judgment could be granted on B–S Steel's claim for fraud on the basis of damages because the arbitrators considered the fraudulent misrepresentations made after April 3, 2001 and determined that B–S Steel had failed to prove damages on any of the misrepresentations by clear and convincing evidence. It is unclear, however, whether all misrepresentations arising from and related to transactions occurring after April 3, 2001, were presented to the arbitrators. In light of this Order, the Court directs the parties to appear on July 14, 2004, at 9:00 a.m., for the purpose of conducting a status conference to inform the Court what claims, if any, survive.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' Motion for Summary Judgment (228) is GRANTED IN PART and DENIED IN PART.

**IT IS FURTHER ORDERED BY THE COURT** that defendants' Motion for Summary Judgment (Doc. 237) is GRANTED IN PART and DENIED IN PART.

**IT IS FURTHER ORDERED BY THE COURT** that defendants' Motion to Stay (Doc. 297) is DENIED as moot.

**IT IS FURTHER ORDERED BY THE COURT** that the parties appear for a status conference on July 14, 2004 at 9:00 a.m., to inform the Court what claims, if any, survive this Order.

IT IS SO ORDERED.

## *ORDER SUPPLEMENTING THE COURT'S ORDER OF JULY 9, 2004 TO GRANT SUMMARY JUDGMENT ON B–S STEEL'S STATE LAW CLAIMS*

On July 9, 2004, the Court entered an Order (Doc. 321) granting partial summary judgment to defendants. In the Order, the Court noted that summary judgment could be granted on plaintiff B–S Steel of Kansas, Inc.'s (B–S Steel) remaining state law claims for fraud and tortious interference. The Court directed the parties to appear on July 14, 2004 at a status confer-

ence "to inform the Court what claims, if any survive." After duly considering both the arguments made at the status conference and the parties' submitted papers, the Court is prepared to rule. For the reasons stated below, the Court's previous Order is supplemented to grant summary judgment on B–S Steel's remaining claims, and this case is dismissed.

**Background**

A complete background of this case can be found in the Court's Order of July 9, 2004. The Court does not repeat here the tortured history of this case, nor the uncontroverted facts contained in its previous Order. To the extent new uncontroverted facts are material to the Court's disposition of the case, the facts are stated within the body of this Order.

For the purposes of this Order, the Court need only summarize its prior summary judgment ruling. In its July 9, 2004 Order, the Court granted in part defendants Texas Industries Inc., Chaparral Steel Texas, Inc. and Chaparral Steel Co.'s motions for summary judgment. The Court granted summary judgment on B–S Steel's claim for deceptive trade practices in violation of the Robinson–Patman Act (R–P Act), and on its claims of fraud and tortious interference with a prospective business relationship relating to or arising from transactions prior to April 3, 2001, based on res judicata principles. The Court gave res judicata effect to an arbitration conducted between B–S Steel and Chaparral Steel Midlothian (Midlothian), previously a defendant in this case. In addition, the Court held that B–S Steel was collaterally estopped from relitigating the issue of damages relating to its post April 3, 2001 purchases and granted summary judgment on its R–P Act claim for this period. Finally, the Court held that B–S Steel lacked standing to bring a claim for permanent injunctive relief pursuant to § 16 of the Clayton Act. The Court refrained from granting summary judgment on B–S Steel's claims for tortious interference and fraud relating to post April 3, 2001 purchases, but noted that it could have granted summary judgment on B–S Steel's remaining state law claims as well.

**Discussion**

**1. Tortious Interference**

To prove its claim for tortious interference with a prospective business relationship, B–S Steel must prove, *inter alia,* that it suffered damages "as a direct or proximate cause of defendant's misconduct." [1] "B–S Steel's tortious interference claim alleges that it had reasonable expectancies with its long-time customers that were wrongfully interfered with by Defendant's price discrimination, causing Plaintiff to suffer lost sales and/or diminished profits." [2] In other words, the tortious interference is the price discrimination. But, the arbitrators determined that B–S Steel's price discrimination claim failed, in part because it could not show that it suffered any damages. B–S Steel rests upon the same damage evidence of lost sales and margin squeeze previously rejected by the arbitrators to support its price discrimination claim. For instance, to support its claim of lost sales, B–S Steel refers the Court to the lost sales analysis performed by its expert, Lawrence Redler. The arbitrators considered this expert evidence and concluded "Mr. Redler's methodology for determining lost sales is inherently flawed and totally unreliable, and it is rejected in toto." The arbitrators simi-

---

**1.** *Rodriguez v. ECRI Shared Servs.,* 984 F.Supp. 1363, 1367 (D.Kan.1997) (citing *Reazin v. Blue Cross & Blue Shield of Kan., Inc.,* 899 F.2d 951, 977 (10th Cir.1990)) (applying Kansas law).

**2.** B–S Steel's Reply to Defendant's Response to Court's Order of July 9, 2004 (Doc. 326).

larly rejected B–S Steel's claim that it suffered margin squeeze damages. As the Court made clear in its previous Order, the arbitrators' findings regarding price discrimination damages are entitled to collateral estoppel effect. B–S Steel has therefore failed to demonstrate that it suffered any damages from defendants' tortious interference.

■ Moreover, even if B–S Steel could show that it suffered lost sales or lost profits, B–S Steel must still show that these losses are attributable to defendants' tortious interference. The arbitrators expressly determined, however, that "the evidence offered by [B–S Steel] fell far short of the quality of evidence needed to demonstrate that any lost sales or margin squeeze was materially caused by [Midlothian's] conduct," i.e., the price discrimination. Indeed, the arbitrators concluded that "there is a very real question whether any lost sales or margin squeeze was attributable to B–S Steel's own business practices." These conclusions, too, are entitled to collateral estoppel effect. Clearly, B–S Steel has not shown that it suffered damages "as a direct or proximate cause of defendant's misconduct." Thus, the Court grants summary judgment on B–S Steel's remaining tortious interference claim.

A considerable portion of B–S Steel's papers are spent attempting to convince the Court that its tortious interference claim does not require a tag-along antitrust claim. The Court need not address this argument because even if B–S Steel is correct, it is undisputed that B–S Steel must still satisfy the elements necessary to bring a tortious interference claim. As the Court has noted, one of these elements, damages suffered by B–S Steel proximately caused by defendants' conduct, is noticeably absent.

## 2. Fraud

To prove a fraud claim, B–S Steel must establish that it suffered injury by clear and convincing evidence.[3] In spite of the arbitrators' determination that B–S Steel failed to prove damages by clear and convincing evidence, B–S Steel suggests that its fraud claim remains viable because the arbitrators simply rejected "the measure and method of calculating fraud damages, but did not utilize any post-April 3, 2001 evidence to reach that conclusion." A review of the arbitration award shows that B–S Steel's suggestion is patently false. The arbitration award states that B–S Steel's exhibit on fraud damages compares the cost of buying steel from defendants with the import price of steel for the period of *October 1999 through May 2001.* Moreover, the damage report submitted by B–S Steel in the arbitration "compared this material and freight cost (i.e., the imported steel cost plus freight) to the actual amount paid by B–S Steel to [Midlothian] for material and freight *for every purchase of wide flange steel between October 1999 and the date of this report.*" The report was dated January 30, 2003. Thus, post April 3, 2001 evidence, including all evidence of steel shipments, was used in the arbitrators' conclusion that B–S Steel "simply failed to present viable evidence of damages directly related to fraud by [Midlothian]." This determination is entitled to collateral estoppel effect.

■ In addition, the arbitrators clearly considered all the misrepresentations made, including those which arose from or related to transactions occurring after April 3, 2001, in reaching their conclusion that B–S Steel failed to show Midlothian's fraud caused it any damages. All four witnesses to the fraudulent misrepresenta-

---

**3.** *Turner & Boisseau, Chartered v. Nationwide Mut. Ins. Co.,* 55 F.Supp.2d 1290, 1291–92 (D.Kan.1999) (applying Kansas law).

tion claims testified at the arbitration. The arbitrators recounted the testimony of each expert in their award. Specifically, the arbitrators discussed: (1) testimony by B–S Steel employee Pat Uhlmer regarding misrepresentations occurring between 2000 and June 2001 made by Midlothian salesman Kevin O'Malley; (2) testimony by Pat Uhlmer of misrepresentations made by Marilee Robertson in July 2000 and May 2001; and (3) testimony by Keith Padgett, employee of B–S Steel that Kevin O'Malley made representations in December 2000 and Marilee Robertson made misrepresentations in April 2000 and January 2001. The arbitrators also noted that "there were numerous specific misrepresentations of fact by officers and salesmen of [Midlothian] to [B–S Steel] over a one year or better period of time." The Court concludes that the arbitrators had before them and considered all misrepresentations, regardless of when the statements were made. Because the Court gives collateral estoppel effect to the arbitrators' determination that B–S Steel failed to prove by clear and convincing evidence that it suffered damages from any of the misrepresentations, including those related to post April 2001 transactions, summary judgment is granted on this claim.

**IT IS THEREFORE ORDERED BY THE COURT** that its previous Order of July 9, 2004, is supplemented to grant summary judgment on B–S Steel's remaining claims for tortious interference and fraud, and that this case is DISMISSED.

IT IS SO ORDERED.

July 29, 2004.

### ORDER DENYING PLAINTIFF B–S STEEL'S MOTION TO CLARIFY AND/OR RECONSIDER THE COURT'S JULY 9, 2004 ORDER

This matter comes before the Court on plaintiff B–S Steel of Kansas, Inc.'s (B–S Steel) Motion to Clarify the Court's July 29, 2004 Order, or in the alternative, to reconsider its ruling (Doc. 324). Specifically, B–S Steel asks the Court to reconsider its ruling granting summary judgment to defendants on certain claims. For the reasons stated below, the Court denies B–S Steel's motion.

*Background*

On July 29, 2004, the Court issued an Order (Doc. 321) granting in part defendants Texas Industries Inc., Chaparral Steel Texas, Inc. and Chaparral Steel Co.'s motions for summary judgment. The Court granted summary judgment on B–S Steel's claim for deceptive trade practices in violation of the Robinson–Patman Act (R–P Act), and on its claims of fraud and tortious interference with a business expectancy relating to or arising from transactions prior to April 3, 2001, based on res judicata principles. The Court gave res judicata effect to an arbitration conducted between B–S Steel and Chaparral Steel Midlothian (Midlothian). Midlothian was added as a defendant in this case in the Second Amended Complaint, but subsequently dismissed from the lawsuit by B–S Steel. In addition, the Court held that B–S Steel was collaterally estopped from relitigating the issue of damages relating to its post April 3, 2001 purchases and granted summary judgment on its R–P Act claim for this period. Finally, the Court held that B–S Steel lacked standing to bring a claim for permanent injunctive relief pursuant to § 16 of the Clayton Act. B–S Steel asks the Court to reconsider its grant of summary judgment on plaintiff's claim for injunctive relief, and plaintiff's price discrimination claim for post April 2001 transactions.

*Discussion*

Because B–S Steel does not ask the Court for clarification, but instead, asks the Court to reconsider its prior order, the Court treats the motion as one for reconsideration. A motion to reconsider filed

within ten days of the entry of final judgment is treated as a motion to alter or amend pursuant to Fed.R.Civ.P. 59(e).[1] A motion to alter or amend judgment pursuant to Rule 59(e) may be granted only if the moving party can establish: (1) an intervening change in the controlling law; (2) the availability of new evidence that could not have been obtained previously through the exercise of due diligence; or (3) the need to correct clear error or prevent manifest injustice.[2] Such a motion does not permit a losing party to rehash arguments previously addressed or to present new legal theories or facts that could have been raised earlier.[3]

## 1. Injunctive Relief Pursuant to § 16 of the Clayton Act

Although never articulated, B–S Steel apparently claims that the Court committed clear error in granting summary judgment on its claim for injunctive relief pursuant to § 16 of the Clayton Act. B–S Steel belabors the different standards required to prove a claim for damages under § 4 of the Clayton Act compared with a claim for injunctive relief pursuant to § 16. B–S Steel argues that "[t]his Court's conclusion that Plaintiff lacked antitrust standing was based solely on the arbitrator's conclusion that B–S Steel had not demonstrated antitrust injury under Section 4 of the Clayton Act . . . ." And, that such a conclusion "is an inaccurate statement of the law."

B–S Steel's argument is flawed on at least two levels. First, the Court clearly recognized the lesser showing required to establish standing for injunctive relief. The Court never required B–S Steel to prove actual injury to obtain standing as demanded by § 4; instead, the Court stated that: "[t]o establish standing to bring a claim for an injunction pursuant to § 16, a plaintiff must show threatened loss or damage of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful." [4]

More importantly, in *Cargill, Inc. v. Monfort of Colorado*,[5] the Supreme Court made clear that although § 16 only requires proof of "threatened loss or damage," the threatened injury must be of the type that would entitle a plaintiff to compensation if the injury actually occurred.[6] In other words, § 16 affords private plaintiffs injunctive relief only for those injuries cognizable under § 4 of the Clayton Act, which provides for the recovery of treble damages.[7] B–S Steel notably neglects to

---

1. *See Van Skiver v. United States*, 952 F.2d 1241 (10th Cir.1991), *cert. denied*, 506 U.S. 828, 113 S.Ct. 89, 121 L.Ed.2d 51 (1992).

2. *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 948 (10th Cir.1995).

3. *Brown v. Presbyterian Healthcare Servs.*, 101 F.3d 1324, 1332 (10th Cir.1996), *cert. denied* 520 U.S. 1181, 117 S.Ct. 1461, 137 L.Ed.2d 564 (1997).

4. Court's July 29, 2004 Order (citing *Cargill Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 113, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986)).

5. 479 U.S. 104, 107 S.Ct. 484, 93 L.Ed.2d 427. The Court cited to *Cargill* in its July 29th Order.

6. *Id.* at 112, 107 S.Ct. 484 (The Court explained that "[i]t would be anomalous . . . to read the Clayton Act to authorize a private plaintiff to secure an injunction against a threatened injury for which he would not be entitled to compensation if the injury actually occurred"). *See also, S.W. Suburban Bd. of Realtors, Inc. v. Beverly Area Planning Ass'n*, 830 F.2d 1374, 1377–78 (7th Cir.1987) (discussing *Cargill*); *Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1234–35 (9th Cir.2000) (same).

7. *Cargill*, 479 U.S. at 112, 107 S.Ct. 484, 93 L.Ed.2d 427.

**1270**

cite to this Supreme Court case in support of its claim that this Court misstated the law.

As the Court explained in its July 19 Order and reiterates now, Supreme Court jurisprudence dictates that a plaintiff may not seek injunctive relief for injuries that are not cognizable under § 4 of the Clayton Act. Here, B–S Steel was given an opportunity to prove a violation of § 4 of the Clayton Act during the arbitration. The arbitrators specifically found:

> Although [B–S Steel] established price discrimination and [Midlothian] failed to meet its burden on its justification defenses, [B–S Steel] failed to meet its evidentiary burden on both injury and quantification of damages. **Accordingly, [B–S Steel's] claim for damages under § 4 of the Clayton Act, based upon a violation of § 2(a) of the Robinson–Patman Act, is denied.**

B–S Steel was not entitled to treble damages pursuant to § 4 on its claim for price discrimination in the arbitration because it did not prove antitrust injury, causation or damages. Nevertheless, B–S Steel seeks an injunction to enjoin the price discrimination. But, the threatened injury, the price discrimination, is **not** the type of injury that would entitle a plaintiff to compensation if the injury actually occurred. Here, the price discrimination occurred, the arbitrators simply determined that plaintiff was not entitled to compensation. Clearly B–S Steel has not alleged an injury cognizable under § 4 in its request for injunctive relief. Rather, quite the opposite is true; B–S Steel relies upon the same injuries which the arbitrators have previously determined were not cognizable under § 4.

In focusing solely on the different standard required to obtain treble damages pursuant to § 4 as compared to the showing required for an injunction to issue pursuant to § 16, B–S Steel has overlooked the obvious: an injunction need not issue for conduct that is not actionable in the first place. B–S Steel's actions are akin to a plaintiff losing on the merits of a claim at trial and then seeking an injunction enjoining the very conduct for which the jury previously determined the defendant was not liable. Here, the arbitrators determined that Midlothian's conduct was not actionable under § 4, and cognizable § 4 damages are a necessary prerequisite to maintaining a § 16 claim for injunctive relief.[8] Thus, the Court denies B–S Steel's motion to reconsider its decision granting summary judgment on the claim for injunctive relief.[9]

**2. Post April 3, 2001 R–P Act Claim**

■ B–S Steel claims that the arbitrators lacked jurisdiction to adjudicate the post April 2001 claims because those claims were not arbitrable, such that the Court's application of collateral estoppel to the arbitrators' findings is improper.

---

**8.** That B–S Steel established price discrimination is of no consequence; the Supreme Court precedent requires B–S Steel to show threatened injury of the type that would entitle a plaintiff to compensation under § 4 of the Clayton Act if the injury actually occurred. *See Cargill,* 479 U.S. at 112, 107 S.Ct. 484, 93 L.Ed.2d 427. As discussed, plaintiff fell short of this showing.

**9.** The Court notes that the rebate programs which constituted the price discrimination ceased by the end of December 2001 so that there is no continuing violation of the R–P Act. Nor does it appear likely that the programs violative of the R–P Act are likely to recur. Although defendants subsequently enacted incentive programs which continued into 2003, the arbitrators found these programs to be "different from the previous programs in that they are programs offered in response to specific programs offered to Steel & Pipe by other steel manufacturers." In this way, the new incentive programs are permissible as defendants were merely "meeting the competition."

But, the arbitrators ... did not adjudicate B–S Steel's post April 2001 claims. Rather the arbitrators simply determined that B–S Steel had failed to prove antitrust damages on its R–P Act claim, for transactions occurring before or after April 3, 2001, and in reaching that conclusion, the arbitrators considered all the evidence before them .... The arbitrators clearly had jurisdiction to decide the claims before them; that an issue decided in the arbitration precludes B–S Steel from asserting the same issue in this case does not implicate the jurisdiction of the arbitrators to decide that issue within the claims before them.[10]

As the Court has already made clear, the mere fact that the post April 2001 claims were not covered by the arbitration agreement does not prevent this Court from applying collateral estoppel to the arbitrators' findings.

B–S Steel's attempt to apply the "jurisdictional competence" exception to the instant case is misplaced. In support of this argument, B–S Steel directs the Court to *Kale v. Combined Insurance Co.*,[11] and *Wolf v. Gruntal & Co.*[12] In *Kale*, the court explained that the "jurisdictional competence exception permits the maintenance in a second suit of a claim stemming from the cause of action previously sued upon if a jurisdictional obstacle precluded raising that *issue* in the first action."[13] No jurisdictional obstacle, however, precluded the arbitrators from considering post April 2001 damages in determining whether B–S Steel had proven a price discrimination claim based upon pre April 2001 claims. Indeed, the arbitrators termed such damages "pertinent" and included evidence of pre and post April 2001 damages in their arbitration award.

Nor does *Wolf* bolster B–S Steel's argument. The focus in *Wolf* was on the *claims* over which arbitrators have jurisdiction, not the *issues* the arbitrators may properly hear. This Court never ruled that the arbitrators had jurisdiction to hear the post April 2001 claims. Notably, the *Wolf* court restated the general rule that "final arbitration awards are entitled to the same preclusive effect as state court judgments, at least as to concerns, claims and *issues* actually raised." The issue of post April 2001 damages was raised by B–S Steel in the arbitration.

B–S Steel also argues that the arbitrators did not consider the post April 3, 2001 damages in reaching their conclusion that it had failed to prove its R–P Act claim and considered the evidence irrelevant. B–S Steel's assertion that the evidence was considered irrelevant by the arbitrators is supported only by reference to the arbitration transcript. B–S Steel stresses a comment by one arbitrator that:

I know what the issues are in this case. And so I'm just going to let you know that at least this one arbitrator—and I haven't conferred with my other panelists—but I'm right now having a lot of problems seeing any relevance to any evidence coming in after April 2001.

Notably absent from B–S Steel's motion, however, is the panel's admission of post April 2001 damage evidence as recorded in the same transcript. When Midlothian's counsel objected that such evidence was irrelevant, the arbitrator said: "I understand what you're saying. It's a point well taken, but I'm going to go ahead and let [B–S Steel's counsel] introduce his evidence." More importantly, the panel as a whole memorialized their opinion that such

**10.** Court's July 29, 2004 Order.

**11.** 924 F.2d 1161.

**12.** 45 F.3d 524.

**13.** 924 F.2d at 1167–68 (emphasis added).

evidence was relevant in the written arbitration award. The arbitrators stated: "the panel recognizes that evidence of incentive payments made after April 3, 2001, but which relate to transactions occurring within the claim period is pertinent to the case. Furthermore, evidence of [Midlothian's] conduct after the Claim Period arguably may be relevant to liability issues and will be addressed in this discussion."

A review of the arbitration proceedings suggests that B–S Steel introduced evidence relating to post April 2001 transactions in the arbitration. First, B–S Steel introduced evidence of post April 2001 damages in the form of its expert report. The expert report included all purchases of steel from Midlothian, even those purchases which occurred after April 2001, and the report estimated damages as late as June 2003. In addition, to prove antitrust injury, B–S Steel presented evidence of damages before and after April 2001. For instance, it presented a graph showing its sales experience with Midland Steel between 1999 and continuing into 2002. B–S Steel also relied on quotes and bids that Midland received from service centers, like B–S Steel, from July 2000 until July 2002. Similarly, B–S Steel presented bid sheets from Pinsker Steel during the September 2001 time period. B–S Steel also introduced evidence of damages on all alleged fraudulent misrepresentations made after April 3, 2001. All of this evidence was considered significant enough to the arbitrators that it was specifically described and discussed in the arbitration award. Thus, not only did the arbitrators allow B–S Steel to present evidence of post 2001 transactions, such evidence was important to the arbitrators' decision.

In rejecting B–S Steel's claim of damages, the arbitrators considered both pre April 2001 and post April 2001 transactions. B–S Steel included *all shipments* of steel in its damage calculations. The arbitrators considered these calculations invalid, and rejected them in toto. Additionally, the arbitrators considered the evidence proffered by B–S Steel on lost sales for periods *after* April 2001 and determined that B–S Steel had not shown that any lost sales were caused by the price discrimination. The arbitrators' conclusion that B–S Steel failed to prove damages, in the form of either lost sales or lost margin, relating to any steel shipments, i.e., those occurring before and after April 2001, is entitled to collateral estoppel effect. B–S Steel's suggestion that the arbitrators never considered the post April 2001 transactions is disingenuous at best, considering that it was B–S Steel that continually placed evidence outside the claim period in front of the arbitrators; this is the same evidence which the arbitrators termed pertinent. Thus, the Court denies B–S Steel's request to reconsider its ruling.

**IT IS THEREFORE ORDERED BY THE COURT** that B–S Steel's Motion to Clarify the Court's July 9, 2004 Order Regarding Collateral Estoppel, or in the Alternative, to Reconsider its Application and Suggestions in Support (Doc. 324) is DENIED.

**IT IS SO ORDERED.**